UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

PAMELA ANN FRENCH,

        Plaintiff,

   v.

COMMISSIONER,
Social Security Administration,

        Defendant.

Case No. 6:17-cv-1047-YY

OPINION AND ORDER

YOU, Magistrate Judge:

## INTRODUCTION

Plaintiff, Pamela A. French ("French"), seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplementary Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-33. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c). For the reasons set forth below, that decision is REVERSED, and this case REMANDED for further proceedings.

///

1 – OPINION AND ORDER

## BACKGROUND

Born in June 1968, French was 47 years old at the time of the ALJ hearing. Tr. 75. French is a high school graduate and attended college for one year. Tr. 212. French alleges she is unable to work due to a combination of obesity, broken tendons in her left shoulder, and anxiety. Tr. 75.

## DISABILITY ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii) & (c), 416.920(a)(4)(ii) & (c). Absent a severe impairment, the claimant is not disabled. *Id*.

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 C.F.R. §§ 404.920(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d); 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite the limitations imposed by his or her impairments. 20 C.F.R. §§ 404.920(e), 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant work. 20 C.F.R. §§ 404.920(a)(4)(iv) & (e), 416.920(a)(4)(iv) & (e). If the claimant cannot perform past relevant work, then at step five, the ALJ must determine if the claimant can perform other work in the national economy. 20 C.F.R. §§ 404.920(a)(4)(v) & (g), 416.920(a)(4)(v) & (g); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); *Tackett*, 180 F.3d at 1099.

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches step five, the burden shifts to the Commissioner to show that jobs exist in the national economy within the claimant's RFC. *Id.* If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. §§ 404.920(a)(v) & (g), 416.920(a)(4)(v) & (g).

## ALJ'S FINDINGS

At step one, the ALJ concluded that French had not engaged in substantial gainful activity since December 15, 2012, the alleged onset date. Tr. 20.

At step two, the ALJ determined that French has the following severe impairments: left shoulder rotator cuff tear and osteoarthritis; obesity (body mass index ("BMI") = 55); and adjustment disorder with mixed anxiety and depression. *Id.* The ALJ found the following

impairments to be non-severe: hypertension and hyperthyroidism; HS; and depression and anxiety. *Id.*

At step three, the ALJ concluded that French does not have an impairment or combination of impairments that meets or equals any listed impairment. Tr. 21. The ALJ found that French has the RFC to perform a range of light work . . . except that she can perform tasks involving no more than six hours of sitting, and no more than six hours of standing/walking in an eight-hour workday (with normal breaks); she can occasionally push/pull at, or above, shoulder level; she can occasionally reach, including overhead, with the left upper extremity; she can frequently climb stairs, but only occasionally kneel, crouch, or crawl; she must avoid direct contact with the general public; and she is limited to work that is low stress and routine in nature. Tr. 23.

The ALJ determined at step four that French was unable to perform any past relevant work. Tr. 26.

At step five, the ALJ determined that considering French's age, education, work experience, and RFC, there was at least one job in that national economy that she could perform: security guard.

Accordingly, the ALJ determined that French was not disabled at any time since her application date, December 15, 2012, through the date of the decision, February 2, 2016. Tr. 28.

## STANDARDS

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028,

1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1205 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "'supported by inferences reasonably drawn from the record.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)); *see also Lingenfelter*, 504 F.3d at 1035.

## DISCUSSION

**I.  Symptom Testimony**

French contends the ALJ erred by finding her symptom allegations less than fully credible. When a claimant has medically-documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

5 – OPINION AND ORDER

In her application materials, French alleged that she is severely limited by her left shoulder condition, which prevents her from lifting or carry any amount of weight, and makes household chores and even personal hygiene tasks difficult. *See generally,* Tr. 232-238. She explained that she requires assistance from her mother and daughter with many of her activities of daily living. *Id.* At the hearing, French testified that she takes Percocet three times daily for pain, and that she must occasionally wear her left arm in a sling due to her shoulder problem. Tr. 43. French also endorsed hip pain, and explained that interacting with the public exacerbates her anxiety. Tr. 51.

In finding French's shoulder complaints less than completely credible, the ALJ noted that her range of motion ("ROM") was "very good" without discernable pain behavior two months post shoulder surgery. Tr. 24, 305. The ALJ, however, failed to appreciate that at the same visit, French described sharp, burning shoulder pain that she rated 7/10. Tr. 306. The ALJ further failed to consider that one month later, French continued to endorse shoulder pain, and her treating physician, Collin Lynn, M.D., reported decreased ROM, tenderness, and spasm on examination. Tr. 329. Twelve months post-surgery, Dr. Lynn continued to diagnose "[p]ain in joint, shoulder region," as the primary complaint, and was still prescribing Oxycodone every eight hours as needed. Tr. 375.

Moreover, the ALJ's finding was inconsistent with his other observations. For example, the ALJ found that French had "relatively benign clinical presentation," yet noted she "continued to experience significant shoulder pain" in early 2015. Tr. 25. The ALJ also recognized that French's surgeon cautioned her, pre-surgery, that her "massive" rotator cuff tear was "likely irreparable." Tr. 24, 309. In light of the surgeon's opinion that the likelihood of success from the shoulder procedure was unlikely, it is unclear why the ALJ found that one fairly

6 – OPINION AND ORDER

unremarkable chart note shortly after surgery undermined subsequent clinical findings as well as French's pain complaints. The ALJ erred by identifying an isolated instance of improvement as a basis for concluding that French's pain allegations were not credible. *See Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014). The longitudinal evidence demonstrates that French's shoulder pain and ROM impairment continued for years after her surgery, despite the early clinical visit where a provider felt she was healing well. As such, the ALJ's finding did not meet the clear-and-convincing threshold.

The ALJ also implied—somewhat equivocally—that French's subjective complaints were not credible because she did not comply with physical therapy after the 2013 shoulder surgery. Tr. 24. Failure to follow a prescribed treatment may be a valid factor in discrediting symptom testimony. *Tommasetti*, 533 F.3d at 1039. The record reflects that French was discharged from physical therapy for non-compliance with her treatment schedule. Tr. 303. She attended six appointments in seven weeks, and had seven cancellations and one no-show. *Id*. However, the ALJ failed to explain why French's failure to attend all of her physical therapy appointments undermined her complaints. Rather the ALJ mentioned her "recovery was hampered by her poor compliance with physical therapy," but acknowledged that because French's surgeon had opined that her shoulder was "likely irreparable," it was "not surprising to find evidence" that it remained "pretty sore." Tr. 24. Thus, the ALJ's finding is undermined on its own terms, as it suggests both that French was not credible for inadequate attendance at physical therapy and that, by virtue of her injury's severity, her shoulder would be expected to be painful regardless. As such, to the extent it is a valid factor in discrediting her pain allegations, the ALJ's rationale is unclear.

The Commissioner argues *post-hoc* that despite French's pain, the objective evidence showed she remained able to use her left shoulder because Dr. Lynn described "normal coordination." Def.'s Br. 3-4; Tr. 420, 426.[1] The doctor's reference to normal coordination, however, was made in the context of a neurological examination. Tr. 420. There is no suggestion that Dr. Lynn was referring to coordination in either of French's shoulders, and even if so, it does not follow that French was able to use her shoulder. For example, while Dr. Lynn observed normal coordination at a treatment visit in November 2013, the doctor also explained that French could not "chop *or move* the wood" she uses to heat her home. Tr. 426 (emphasis added). Moreover, a subsequent chart note by Dr. Lynn referenced decreased ROM and tenderness. Tr. 372. The Commissioner's argument in support of the ALJ's finding is therefore unavailing. *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (holding that reviewing court may not affirm ALJ's decision on grounds the ALJ did not invoke).

The ALJ's finding regarding French's mental symptoms is also not clear and convincing. In finding that French's mental symptoms "did not appear to be particularly disabling," the ALJ determined that she had no more than moderate impairment of social and occupational functioning based on a global assessment of functioning ("GAF") score of 55. Tr. 22, 25. However, the ALJ failed to recognize that the GAF score of 55 was the estimate at the time of French's initial mental evaluation in March 2014. Tr. 360-61. By the time French discontinued treatment in October 2014, her GAF score had dropped to 45, which reflects greater than moderate impairment. Tr. 364.

---

[1] In at least three places in the medical record, treating physician Dr. Lynn referenced French's *right* shoulder as the source of her pain, rather than her surgical *left* shoulder. *See* Tr. 340, 372, 420. Based on the record as a whole, including earlier chart notes from Dr. Lynn recognizing that French's problem shoulder was the *left*, the court is satisfied that Dr. Lynn's references to *right* shoulder pain were clerical errors. The Commissioner concurs with the court's interpretation of the record. Def.'s Br. 6.

The Commissioner also discredits *post-hoc* the credibility of French's allegations regarding her mental limitations due to her poor follow-through with treatment. Def.'s Br. 4. The ALJ, however, generally appeared to credit French's mental allegations. He found that French's "mental health treatment records document her feelings of depression, hopelessness, and general anxiety." Tr. 25, 361. Further, the ALJ adopted the diagnoses of adjustment disorder with mixed anxiety and depression at step two. Tr. 20, 361. Moreover, the ALJ included significant limitations arising from French's mental impairments in the RFC: "[French] must avoid direct contact with the general public, and she is limited to work that is low stress and routine in nature." Tr. 23. Accordingly, the Commissioner's argument fails.

For all the foregoing reasons, the ALJ's credibility analysis was inadequate, and therefore remand is appropriate. *See Burrell*, 775 F.3d at 1140 (one weak rationale for undermining a claimant's symptom testimony is insufficient to affirm an ALJ's overarching adverse credibility finding).

## II. Medical Opinion Evidence

French assigns error to the ALJ's assessment of the medical opinion of her treating physician, Dr. Lynn. The ALJ is responsible for resolving conflicts in the medical record, including conflicting physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If,

however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living ("ADLs"). *Tommasetti*, 533 F.3d at 1040.

In February 2015, Dr. Lynn opined that French was incapable of engaging in full-time employment based on her medical conditions, including failed reconstruction of her shoulder.[2] Tr. 340. The doctor documented continuing pain and weakness in French's shoulder, as well as pain and weakness in her lower back, radiating down to her knees. *Id.* Dr. Lynn noted that French's anxiety was "crippling" in social situations. *Id.* Dr. Lynn opined that French would need a work schedule that would allow her to work short days and occasionally be absent entirely, and stated that she cannot stand for more than ten minutes at a time. *Id.* Following a request from the ALJ, Dr. Lynn subsequently clarified that French's lower back pain became "a disabling force in her life." Tr. 430. The doctor explained that French's back pain had worsened in the prior six months, such that she could no longer stand for more than five minutes and could not sit for more than 30 minutes before changing positions. *Id.* He further noted that French was weaker in her right lower extremity, and that her knee was limited by tenderness and weakness. *Id.*

---

[2] As noted *supra*, Dr. Lynn's opinion erroneously referred to the *right* shoulder, although it was in fact the *left* shoulder that was reconstructed. *See, e.g.*, Tr. 329 (pain in left shoulder postoperatively), 352-53 (describing procedure to repair left shoulder on May 22, 2013).

The primary reason the ALJ accorded Dr. Lynn's opinion little weight was that the doctor attributed French's pain complaints to her right shoulder, rather than the left. As discussed above, at least three of Dr. Lynn's chart notes identified the incorrect shoulder as the source of pain, although the record is clear that it was French's left shoulder that was operated on in 2013 and continued to cause pain and have functional impairment thereafter. However, the ALJ found, erroneously, that "Dr. Lynn's treatment notes indicate no mention of any left shoulder problems." Tr. 25. The ALJ went on to conclude: "This suggests that the claimant's left shoulder surgery was not as unsuccessful as the physician reports." *Id.*

The finding is squarely contradicted by the record—Dr. Lynn mentioned French's left shoulder issue several times. *See* Tr. 287, 289, 292, 329, 379-81, 388-89. Thus, it appears the ALJ impugned the credibility of French's pain allegations by accepting Dr. Lynn's erroneous chart notation at face value. Further, as French explains, the fact that Dr. Lynn's treatment notes do not mention any left shoulder problems is not a logical reason to discredit his conclusions regarding her "painful right shoulder." Tr. 25, 372-73.

The other rationale the ALJ provided for rejecting Dr. Lynn's opinion was that his treatment notes did not document any signs of back pain or radicular symptoms. French argues that the "radicular symptoms down to [French's] knees" that Dr. Lynn alluded to in his February 2015 opinion are related to his observations of right knee pain and tenderness in August 2013.

The record reflects no diagnoses or treatment of French's lower back or right knee. Although Dr. Lynn clarified in an October 26, 2015 statement that French "is weaker in her right lower extremity, and her right knee seems to be limited by tenderness and weakness . . . which adds to the issues she is having with her lower back[,]" as the ALJ found, this opinion was not well-supported by treatment notes. The ALJ was not required to accept Dr. Lynn's opinion

regarding the back pain radiating to the knees if it was not well-supported by the record. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (ALJ may reject physician's opinion that is brief, conclusory, or inadequately supported by clinical findings). Even if the record could be read to support French's position, the court is bound to affirm the ALJ's finding regarding the lower back to the extent it is rational and supported by substantial evidence, which is the case here. *Batson*, 359 F.3d at 1193.

French argues that Dr. Lynn's medical statements regarding lower back and knee impairment created ambiguity in the record, which triggered the ALJ's obligation to seek clarification. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("ambiguous evidence . . . triggers the ALJ's duty to conduct an appropriate inquiry"). Here, the ALJ noted that Dr. Lynn's initial February 2015 statement discussed lower back and hip pain, but did not include "actual findings to support an impairment," and left the record open for 20 days to give French's counsel an opportunity to obtain clarification from the doctor. Tr. 62, 70. Dr. Lynn subsequently provided his second statement, which explained that French's lower back pain had developed into a disabling force, noting some postural limitations. Despite providing functional limitations and describing back pain, however, Dr. Lynn did not include any diagnosis regarding French's back, nor did he include any objective examination findings. *See* Tr. 21, 430. Accordingly, the ALJ did not err by declining to find back, hip, or knee pain a severe impairment. Further, the ALJ did not err by declining to develop the record beyond holding the record open and obtaining a follow-up opinion from Dr. Lynn, because ALJs have broad latitude in determining if and how to further develop record evidence. 20 C.F.R. §§ 404.1520b, 416.920b.

### III. Lay Witness Testimony

French asserts that the ALJ erred in rejecting testimony provided by several lay witnesses. Lay testimony regarding the severity of symptoms and level of functional impairment is generally competent evidence that an ALJ must consider. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). In order to reject lay witness testimony, an ALJ must provide reasons germane to each witness for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). If an ALJ errs in considering lay witness testimony, however, the error may be harmless when the ALJ invokes the same evidence to reject lay witness testimony that was invoked to discredit the claimant's symptom testimony. *Id.* at 1122.

Here, the ALJ reviewed and commented on the lay witness statements provided by several of French's friends and family members, generally according them partial weight. Tr. 25-26. French's chief contention is that the ALJ erred by rejecting Nina Patrick's testimony that French could not lift any weight with her left shoulder and could lift only one pound with her right. Tr. 245. Indeed, the ALJ did not provide any reason to reject Ms. Patrick's statement, other than to note it was consistent with "light-level exertion that avoids more than occasional use of her left upper extremity." Tr. 25. Clearly, the functional limitation Ms. Patrick endorsed was nowhere near the requirements of light-level work, and therefore the ALJ's rationale was not germane. The error was not harmless because the ALJ also failed to provide legally-sufficient reasons to reject French's own testimony about her left shoulder impairment, as well as Dr. Lynn's opinion that French's shoulder continued to cause debilitating pain.

### IV. Step Five Error

French argues that the ALJ failed to carry the burden of proof in identifying other work in the national economy at step five. Because this court finds that the ALJ committed reversible

error in evaluating French's symptom testimony, assessing the opinions provided by Dr. French regarding French's left shoulder impairment, and failing to provide germane reasons to reject at least one of the lay witnesses' statements regarding plaintiff's left shoulder, the ALJ's RFC was not based on substantial evidence. Because the ALJ must reevaluate French's RFC on remand, the ALJ's step five finding is moot. Thus, the court does not reach French's final assignment of error.

## V.     Remand for Further Proceedings

When a court determines the Commissioner's ultimate disability decision includes legal error and/or is unsupported by substantial evidence, the court may affirm, modify, or reverse the decision by the Commissioner "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Here, the ALJ failed to provide legally sufficient reasons to discredit competent evidence as to French's left shoulder injury, including French's own symptom testimony, the medical opinion of treating Dr. Lynn, and lay witness statements.

In determining whether to remand for further proceedings or the immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. Even if all of the requisites are met, however, the court may still remand for further proceedings, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id.* at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the

medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts into serious doubt" whether the claimant is disabled under the Act. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (citing *Burrell*, 775 F.3d at 1141 (internal quotation marks omitted)).

The first prong of the credit-as-true inquiry is met based on the ALJ errors listed above. Indeed, although the Commissioner did not explicitly concede ALJ error, the Commissioner nonetheless contends that further proceedings "would be useful" to address whether French could return to work considering her left shoulder impairment. Def.'s Br. 11.

French argues that the erroneously discredited evidence should be credited as true and the court should remand this case for immediate payment of benefits. Pl.'s Reply 9-10. However, French argument is inapposite, as it glosses over the second prong of the credit-as-true inquiry. Here, the record remains ambiguous as to the extent of the functional limitation of French's left shoulder. Therefore, the agency must procure a consultative examination to determine the extent of French's physical limitations.[3] Following the consultative examination, the ALJ on review shall reassess French's symptom allegations, the medical opinion statements provided by Dr. Lynn, and the lay witness statements of record. Accordingly, because the record is not complete, the court does not reach the third prong of the credit-as-true analysis.

///

///

///

---

[3] The consultative examination is not to be limited to the left shoulder, but should provide a comprehensive musculoskeletal examination to thoroughly assess French's physical functional capacities. Although the ALJ did not err by rejecting Dr. Lynn's assessments as to French's back and right knee, further consultative examination may provide the clarity that the ALJ sought in advising French's counsel to reconnect with the treating physician. *See* Tr. 62.

**ORDER**

The Commissioner's decision was not based on substantial evidence or free of harmful legal error. This case is, therefore, REVERSED and REMANDED for further proceedings consistent with this opinion and pursuant to 42 U.S.C. 405(g).

DATED May 3, 2018.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge